UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **J. GREGORY KINNETT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10690** |
| **HOSPITAL SERVICE DISTRICT NUMBER ONE OF TANGIPAHOA PARISH, ET AL** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 41). For the following reasons, Defendants' Motion is **DENIED**.

### BACKGROUND

Plaintiff, J. Gregory Kinnett, MD, was hired as an orthopedic surgeon by Defendants North Oaks Physician Group, LLC ("North Oaks") and North Oaks Health System ("NOHS") (collectively "Defendants") in April of 2008. Plaintiff's employment agreement provided for a two-year employment term with successive one-year automatic renewals unless either party provided written notice at least 180 days before that term's expiration. In November of 2017, Michelle Sutton ("Sutton"), the then-Chief Executive Officer of NOHS, decided not to renew Plaintiff's contract for the following year. On November 30, 2017, Defendants sent Plaintiff a letter notifying him of their intent to terminate him under the "without cause" provision of his contract, effective May 29, 2018. At

1

the time of Plaintiff's discharge, he was 72 years old.[1] Plaintiff alleges that his age was the sole reason for his termination and brings claims against Defendants under the Age Discrimination in Employment Act and the Louisiana Age Discrimination in Employment Act.

Presently before the Court is Defendants' Motion for Summary Judgment, whereby Defendants ask that this Court to dismiss Plaintiff's claims against them.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[1] There is a conflict in the record as to whether Plaintiff was 71 or 72 at the time of his discharge. *See* Doc. 1 (Plaintiff's Complaint stating that he was 71 in May of 2018); Doc. 52 (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment stating that Plaintiff was 72 at the time of his termination).

[2] FED. R. CIV. P. 56.

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[4] *Id.* at 248.

[5] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[8] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

Plaintiff's claims arise under the Age Discrimination in Employment Act[11] ("ADEA") and the Louisiana Employment Discrimination Law[12] ("LEDL"). Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

---

[6] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[8] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[11] 29 U.S.C. § 621 *et seq.*
[12] LA REV. STAT. § 23:301 *et seq.*

employment, because of such individual's age."[13] As the age discrimination sections of the LEDL are modeled after federal law, the LEDL is governed by federal precedent.[14] Accordingly, Plaintiff's LEDL claim follows the same analysis as Plaintiff's claims under the ADEA and does not require a separate discussion.[15]

The Fifth Circuit applies the framework outlined in *McDonnell Douglas Corp. v. Green* to claims of discrimination under the ADEA.[16] Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first make a prima facie case of age discrimination by showing that:

> (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.[17]

If Plaintiff is able to make his prima facie case of discrimination, the burden then shifts to Defendants to "articulate a legitimate, nondiscriminatory reason for its decision."[18] If Defendants succeed, then the burden shifts back to Plaintiff to show that Defendants' proffered reason was merely pretext for discrimination.[19] Under the ADEA, however, Plaintiff has the ultimate burden of proving "by a preponderance of the evidence (which may be direct or

---

[13] 29 U.S.C. § 623(a)(1).

[14] Morse v. Bd. of Supervisors Louisiana State Univ. Agric. & Mech. Coll., No. CV 19-9240, 2020 WL 2037192, at *6 (E.D. La. Apr. 28, 2020) (citing O'Boyle v. La. Tech Uni., 741 So. 2d 1289, 1290 (La. App. 2 Cir. 1999)).

[15] *See* McDaniel v. Nat'l R.R. Passenger Corp., 705 F. App'x 240, 244 (5th Cir. 2017) ("Both parties agree that the federal and state law claims are governed by the same analysis; we will not separately analyze.").

[16] *See* Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).

[17] Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010).

[18] *Patrick*, 394 F.3d at 315.

[19] *Id.*

circumstantial), that age was the 'but-for' cause of the challenged employer decision."[20]

In the current Motion, Defendants argue that summary judgment is appropriate as Plaintiff cannot meet his burden under the *McDonnell Douglas* framework.

### A. Plaintiff's Prima Facie Showing

*(1) Plaintiff Was Discharged*

Defendants first argue that their decision to not renew Plaintiff's contract did not constitute a discharge. Defendants cite no law in support of this assertion. Within the Fifth Circuit, "the non-renewal of [the employee's] contract constitute[s] a termination of employment, an adverse employment action."[21] This Court therefore finds that Plaintiff was discharged.

*(2) Plaintiff Was Qualified for the Position*

Plaintiff argues that his forty-five years of experience as an orthopedic surgeon and current employment as a Clinical Assistant Professor of Orthopedic surgery at LSU Health Sciences Center demonstrates his qualification for the position at North Oaks. "Defendants do not now nor have they previously disputed Plaintiff's clinical skill and qualifications as an orthopedic surgeon."[22] Defendants do, however, argue that Plaintiff was not qualified "for the position he held *as an employee of North Oaks*" because he

---

[20] Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)).

[21] Mooney v. Lafayette Cty. Sch. Dist., 538 F. App'x 447, 453 (5th Cir. 2013) (citing Breaux v. City of Garland, 205 F.3d 150, 157 (5th Cir. 2000). *See* Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 370 (5th Cir. 1980) (finding that the plaintiff met his prima facie burden under the ADEA where defendants decided not to renew plaintiff's contract); Rollins v. Clear Creek Indep. Sch. Dist., No. CIV A G-06-081, 2006 WL 3302538, at *2 (S.D. Tex. Nov. 13, 2006) ("Here it is not contested that Plaintiff's contract was not renewed, which is equivalent to discharge[.]").

[22] Doc. 41-1 at 10.

failed to meet Ms. Sutton's "expectations in terms of efficiency, profitability, and collegiality."[23]

In *Wooten v. McDonald Associates, Inc.*, the Fifth Circuit explained that the "qualified" inquiry refers to objective qualifications such as training, experience, and physical capacity.[24] As Defendants do not dispute that Plaintiff is objectively qualified and capable of performing as an orthopedic surgeon, the Court finds that Plaintiff was qualified for the position.

*(3) Plaintiff Was within the Protected Class*

The class of individuals protected under the ADEA includes those who are at least forty years of age.[25] As Plaintiff was over 70 when he received his notice of termination, Plaintiff is within the protected class.

*(4) Plaintiff Was Replaced by Someone Younger*

As evidence that Plaintiff was replaced, Plaintiff points to the fact that, between 2016 and 2019, Defendants hired four orthopedic surgeons believed to be under the age of 40.[26] The surgeons who allegedly replaced Plaintiff are: Dr. Jeffery Witty, a sports medicine fellow; Dr. Vince Lands, an orthopedic trauma fellow; Dr. Patrick Barousse, an ankle surgery fellow; and Dr. Nader Shourbaji, a hand and microvascular surgery fellow.[27]

Defendants contend that these younger surgeons were not hired to replace Plaintiff. As support for this assertion, Defendants point to the Declaration of NOHS's Physician Services Director, Stephanie Kropog. Kropog

---

[23] *Id.* at 9–10.
[24] 788 F.3d 490, 499 n.7 (5th Cir. 2015) (and cases cited therein). *See also* Quick v. Wal-Mart Stores, Inc., 728 F. App'x 396, 397 (5th Cir. 2018).
[25] *See* 29 U.S.C. § 631(a), 633a(a); Leal v. McHugh, 731 F.3d 405, 411 (5th Cir. 2013).
[26] The exact ages of the new surgeons are not disclosed. Based on the timing of the surgeons' graduations, however, both parties believe the surgeons to be less than 40 years old. *See* Doc. 52-2 at 9; Doc. 52 at 12 n. 58.
[27] *See* Doc. 41-7 at 2–4.

testified that the new surgeons were hired in accordance with "North Oaks' three-year recruitment plan for orthopedic surgeons, which was finalized in January of 2017 and ran through 2020."[28] Kropog explained that the "plan was to add orthopedic surgeons with fellowship training in the recognized subspecialties of orthopedic surgery: Trauma, Spine, Hand and Upper Extremities, Sports Medicine, Foot and Ankle, and Joint."[29] Defendants thus contend that each surgeon was hired because of his fellowship training in his respective sub-specialty—not to replace Plaintiff. Further, Defendants argue that because Plaintiff is a general orthopedic surgeon, the new hires could not have replaced him.

The Court, however, finds that Plaintiff has presented sufficient evidence to refute Defendants' contentions. First, Plaintiff testified that he is not merely a generalist as Defendants contend, but that he holds a fellowship in hand surgery.[30] Plaintiff's alleged hand specialty is partially corroborated by Sutton's testimony that "Dr. Kinnett liked to do mostly hand work and bone tumors. That was kind of his niche for us."[31] Although Defendants argue that Plaintiff's fellowship is uncompleted, both Plaintiff's and Sutton's testimony at least create a genuine issue of material fact as to whether Dr. Shourbaji shares a sub-specialty with Plaintiff.

Additionally, Plaintiff presents evidence that, regardless of sub-specialty, many of the new surgeons are performing the same procedures at North Oaks as did Plaintiff. Plaintiff presents evidence that, over a two-year period at North Oaks, he performed 90 knee surgeries, 84 hip surgeries, 51

---

[28] *Id*. at 4.
[29] *Id*.
[30] *See* Doc. 52-3 at 2–3.
[31] Doc. 52-2 at 3.

ankle surgeries, 59 shoulder surgeries, 118 hand surgeries, 32 wrist surgeries, 18 elbow surgeries, 29 tendon repairs, and 85 peripheral nerve surgeries.[32] In Sutton's deposition testimony, she conceded that Plaintiff performed procedures that fall within the sub-specialties of the new surgeons and that many of the new surgeons perform surgeries outside of their sub-specialties that overlap with those performed by Plaintiff.[33] The Court thus finds that Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether at least one of the newly hired surgeons replaced him.

## B. Defendants' Proffered Legitimate, Nondiscriminatory Reason for Not Renewing Plaintiff's Contract

As Plaintiff has presented sufficient evidence of a prima facie case of discrimination, the burden next shifts to Defendants to "articulate a legitimate, nondiscriminatory reason for [their] decision."[34]

### 1. Defendants' Discovery Responses

As a preliminary matter, Plaintiff argues that the Court should refrain from looking to the reasons stated in Defendants' briefing as those reasons are contrary to Defendants' discovery responses. In Plaintiff's First Set of Interrogatories and Requests for Production, Plaintiff's Interrogatory No. 4 reads: "If you contend NOPG's termination of Dr. Kinnett was caused by something other than the allegations that Dr. Kennett [sic] set forth in his Complaint, please describe in detail such factors, actions or conditions that you feel warranted Dr. Kinnett's termination."[35] In response, North Oaks answered: "In lieu of a narrative answer, NOPG directs Plaintiff to

---

[32] *See* Doc. 52-6.
[33] *See* Doc. 52-2 at 6–10.
[34] *Patrick*, 394 F.3d 311 at 315.
[35] Doc. 52-5 at 2.

correspondence dated November 30, 2017, styled 'Notice of Termination of Employment,' produced in response to Plaintiff's accompanying Request for Production No. 3."[36] NOHS's answer is nearly identical.[37] The referenced Notice of Termination of Employment apprises Plaintiff that his employment is being terminated "without cause."[38] Plaintiff therefore argues that Defendants' response essentially avers that there was *no reason* for Plaintiff's termination and that Defendants should be bound by this assertion. Accordingly, Plaintiff asks this Court to deny Defendants' Motion for Summary Judgment and instead issue summary judgment in Plaintiff's favor.[39] The Court disagrees.

Plaintiff cites *Bradley v. Allstate Ins. Co.*[40] for the proposition that "a party is bound by its discovery response on a motion for summary judgment."[41] The Fifth Circuit in *Bradley*, however, clearly stated that "interrogatory responses are *not* binding judicial admissions . . . [but] may be used as evidence for assessing summary judgment."[42] "Thus, interrogatory answers are not like Rule 36 admissions that are conclusive to the matters admitted and 'cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.'"[43] Although the Court agrees with Plaintiff that Defendants' discovery responses are incomplete and

---

[36] *Id.*

[37] *See* Doc. 52-5 at 18.

[38] Doc. 41-6.

[39] *See* Doc. 52 at 16.

[40] Bradley v. Allstate Ins. Co., 620 F.3d 509 (5th Cir. 2010)).

[41] *Id.* (citing *Bradley*, 620 F.3d at 527 n.21).

[42] *Bradley*, 620 F.3d at 527 n.21 (emphasis added) (citations omitted). The *Bradley* court found that "[t]he failure to advance any Rule 56(c) proof, *together with* the concession in their interrogatory response, demonstrates that no genuine issue of material fact exists as to the value of the lost contents." *Id.* at 527 (emphasis added).

[43] Moreland v. United States, No. 3:11-CV-358-L, 2013 WL 3283700, at *5 (N.D. Tex. June 28, 2013) (quoting In re Carney, 258 F.3d 415, 420 (5th Cir. 2001).

should have amended or supplemented, the Court does not find this error so prejudicial as to pretermit consideration of Defendants' summary judgment evidence. Accordingly, this Court will look to Defendants' submissions in support of their Motion for Summary Judgment to determine whether Defendants have succeeded in proffering a legitimate, nondiscriminatory reason for terminating Plaintiff's contract.

### 2. *Defendants' Proffered Nondiscriminatory Reason*

Defendants assert that Sutton was primarily responsible for making the decision not to renew Plaintiff's contract and therefore look to her testimony to explain why Plaintiff was terminated. Sutton primarily attributes her decision to terminate Plaintiff to what Defendants refer to as "the Surgery Incident."[44] Plaintiff performed shoulder surgery on his wife on November 16, 2017.[45] According to Sutton, Dr. Rob Peltier ("Peltier"), the Chief Medical Officer, confronted Plaintiff prior to the surgery and told Plaintiff that he must have an additional surgeon present during the surgery because of the close familial relationship.[46] Allegedly, Plaintiff indicated to Peltier that he would cancel the surgery.[47] Plaintiff nevertheless went ahead with the surgery without another surgeon present.

Sutton describes Plaintiff's insubordination to Peltier as "the straw that broke the camel's back,"[48] but explains that there were previous indiscretions that contributed to her decision to terminate Plaintiff's contract.[49] Allegedly, Plaintiff drew complaints from both staff and patients. Sutton testified that

---

[44] *See* Doc. 41-1 at 4.
[45] Doc. 52-7 at 4.
[46] *See* Doc. 41-2 at 14–16.
[47] *See id.* at 16.
[48] *Id.* at 18.
[49] *Id.* at 17–20.

staff would complain that Plaintiff treated them poorly and that patients would complain about Plaintiff's refusal to allow family members in the exam room.[50] Additionally, Sutton testified that Plaintiff's productivity was low as Plaintiff would only schedule six to ten patients per day whereas the other doctors would see anywhere from thirty to sixty patients per day.[51] In sum, Defendants proffer many reasons for Plaintiff's termination and suggest that Sutton only terminated Plaintiff under the "without cause" provision "to spare Plaintiff the indignity of a for-cause termination."[52] The Court thus finds that Defendants have articulated a legitimate nondiscriminatory reason for Plaintiff's termination.

### C. Plaintiff's Showing of Pretext

Under the *McDonnell Douglas* framework, the burden now shifts back to Plaintiff to show that there is a genuine issue of material fact as to whether Defendants' proffered reason is pretext for age discrimination.[53] "A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[54] "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."[55] Here, the Court finds that Plaintiff has presented sufficient evidence to refute Defendants' proffered reasons for termination.

---

[50] *Id.* at 17–18.
[51] *Id.* at 24.
[52] *Id.* at 33; Doc. 41-1 at 5.
[53] Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010); McMichael v. Transocean Offshore Deepwater Drilling, Inc., 934 F.3d 447, 456 (5th Cir. 2019).
[54] *Moss*, 610 F.3d at 922. (quoting Laxton v. Gap Inc., 33 F.3d 572, 578 (5th Cir. 2003)).
[55] *Laxton*, 33 F.3d at 578 (citations omitted).

Plaintiff's recounting of the Surgery Incident creates a genuine issue of fact as to whether the incident caused Sutton to terminate Plaintiff. Plaintiff admits that Peltier called him to request that he have another surgeon present during his wife's surgery but denies that he told Peltier that he would cancel the surgery.[56] Plaintiff also testified that, as Peltier was not a surgeon himself, Peltier had no authority to dictate Plaintiff's surgical decisions.[57] Defendants' only support for their rendition of the Surgery Incident is Sutton's deposition testimony. Accordingly, Plaintiff's contrary testimony creates a genuine issue of material fact as to whether Plaintiff actually demonstrated the insubordination that Defendants cite as the reason for his termination.

Additionally, Plaintiff presents evidence that North Oaks management was aware and approving of Plaintiff's surgery on his wife. Indeed, a week before the surgery, Plaintiff's wife sent a letter to North Oak's Chief Human Resources Officer, Jeff Jarreau ("Jarreau"), requesting "provider coverage without regard to relationship," or insurance coverage, for the surgery.[58] Jarreau approved the request on November 13, 2017, and sent notice of approval to Plaintiff on November 17, 2017.[59] Jarreau's approval is particularly relevant as there is evidence that he participated in Plaintiff's termination.[60] Plaintiff further declares that he performed over a dozen surgeries on close family members without an additional surgeon present, four of which were at North Oaks.[61] The Court thus finds that Plaintiff has created

---

[56] Doc. 52-3 at 9.
[57] *Id*. at 9, 10.
[58] Doc. 52-11 at 1.
[59] *Id*. at 2–3.
[60] Sutton testified that Jarreau participated in Plaintiff's annual performance review. Doc. 41-5 at 19. Plaintiff also testified that Percival Kane and Jarreau met with Plaintiff to inform him that he was being terminated. Doc. 52-3 at 5.
[61] Doc. 52-11 at 5.

a genuine issue of fact as to whether Plaintiff's surgery on his wife was truly the reason for his termination.

Plaintiff has also sufficiently refuted Defendants' contention that Plaintiff's attitude or performance contributed to his termination. The Court first notes that Defendants have not presented any written evidence to corroborate Sutton's testimony that Plaintiff received staff complaints, patient complaints, or demonstrated inadequate productivity. To the contrary, Plaintiff presents nine years of positive annual clinical evaluations and four "North Oaks Champions" awards granted "[i]n appreciation and recognition of your outstanding contributions to our patients, visitors, physicians, staff and community."[62] Notably, Plaintiff's last award was received on May 9, 2017, only six months prior to his termination.[63]

Finally, Plaintiff directs this Court to Sutton's testimony that Plaintiff "was very old school" and "very set in his ways" as evidence of discriminatory animus.[64] "[W]hen an employee offers workplace comments as circumstantial evidence of age discrimination, the court applies a flexible two-part test, under which the comments must show: '(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'"[65] As it is undisputed that Sutton was primarily responsible

---

[62] Doc. 52-4. at 1–4.
[63] "Too short a period between a good and poor evaluation, though, impeaches the credibility of the latter. A negative oral evaluation is particularly suspicious when it follows a consistent pattern of positive written evaluations." 1 ANDREW J. RUZICHO, LOUIS A. JACOBS & ANDREW J. RUZICHO II, EMPLOYMENT PRACTICES MANUAL § 5:18, Westlaw (database updated December 2020); Salazar v. Lubbock Cty. Hosp. Dist., 982 F.3d 386, 390 (5th Cir. 2020).
[64] *See* Doc. 52-1 at 9.
[65] Squyres v. Heico Companies, L.L.C., 782 F.3d 224, 236 (5th Cir. 2015) (quoting Reed v. Neopost USA, Inc., 701 F.3d 434, 441 (5th Cir. 2012)).

for Plaintiff's termination, the only question is whether the comments demonstrate discriminatory animus.

Defendants argue that the comments are irrelevant to Sutton's termination decision because, when "[c]onsidered in context[,] . . . the quotations came during the course of Ms. Sutton's explanation of how Plaintiff's conduct and attitude had led to complaints from colleagues and staff over the course of his employment."[66] Although the Court agrees with Defendants' characterization of the context, the Court disagrees with Defendants' conclusion as to relevance. Sutton testified that complaints from colleagues and staff helped to inform her decision to terminate Plaintiff.[67] Accordingly, Sutton's comments help to create an inference that the alleged "complaints" Sutton received were actually comments on Plaintiff's age and that age was Sutton's true motivation for terminating Plaintiff. Although the Court does not find these comments dispositive, the Court finds that these comments, together with Plaintiff's other evidence of pretext, "would allow a reasonable jury to conclude that age was the reason for the termination."[68] The Court therefore finds that Plaintiff has presented sufficient evidence of pretext to preclude summary judgment.

Defendants argue repeatedly that Plaintiff has presented insufficient *quality* of evidence to defeat summary judgment. Accordingly, Defendants ask this Court to follow the reasoning of *Salazar v. Lubbock County Hospital*

---

[66] Doc. 56 at 2.
[67] Doc. 41-2 at 17–18.
[68] Goudeau v. Nat'l Oilwell Varco, L.P., 793 F.3d 470, 475 (5th Cir. 2015) (internal quotations omitted) ("We are convinced that the doubts that Goudeau has raised about the warnings, combined with the ageist comments that are potentially corroborated by the firing of both Goudeau and Fisher, would allow a jury to conclude that age was the reason for termination.").

*District*, where the Fifth Circuit found, in part, that plaintiff's own statements were insufficient to defeat defendant's motion for summary judgment.[69] *Salazar* is, however, distinguishable as the *Salazar* defendant "submitted orientee and preceptor evaluations. It attached employee satisfaction surveys. Most of all, [the defendant] included Salazar's performance evaluation for 2015, which was provided to her in March 2017 and clearly details areas of concern over her past performance as well as directives for improvement in the future."[70] Here, Defendants rely almost exclusively on Sutton's deposition testimony to support their Motion. Thus, it is ironically the quality of Defendants' evidence that motivates this Court to rule in Plaintiff's favor.

A court "'may not make credibility determinations or weigh the evidence' in a ruling on a motion for summary judgment."[71] "Instead, a court 'must disregard all evidence favorable to the moving party that the [finder of fact] is not *required* to believe.'"[72] In *Heinsohn v. Carabin & Shaw, P.C.,* the Fifth Circuit reversed the district court's granting of the defendant's summary judgment where the defendant relied primarily on deposition testimony.[73] The *Heinsohn* court held that

> [w]hen, as here, a motion for summary judgment is premised almost entirely on the basis of depositions, declarations, and affidavits, a court must resist the urge to resolve the dispute—especially when, as here, it does not even have the complete

---

[69] *Salazar*, 982 F. 3d 386 (2020)
[70] *Id*. at 291.
[71] Holmes v. N. Texas Health Care Laundry Coop. Ass'n, 304 F. Supp. 3d 525, 539 (N.D. Tex. 2018) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254–55 (1986)).
[72] Heinsohn v. Carabin & Shaw, P.C., 832 F.3d 224, 245 (5th Cir. 2016) (quoting Chambers v. Sears Roebuck & Co., 428 Fed. App'x. 400, 407–408 (5th Cir. 2011)).
[73] *Id*.

depositions. Instead the finder of fact should resolve the dispute at trial.[74]

Like in *Heinsohn*, this Court finds that Defendants' case is almost entirely reliant on Sutton's credibility and that this credibility determination should be left for the jury.

### D. The Same Actor Inference

Finally, Defendants argue that application of the "same actor inference" dictates a ruling in their favor. "When the same person is responsible for hiring and terminating an individual, who was already a member of the AEDPA-protected class when hired, [the same actor inference presumes] that age was *not* the reason for the termination.[75] The presumption, however, "is not irrebuttable,"[76] and does "not rule out the possibility that an individual could prove a case of discrimination"[77] Defendants argue that the inference applies here as Sutton recruited and hired Plaintiff in 2008 when he was already 62 years of age, effectively "hired" him each year by renewing his contract, and ultimately made the decision to end his contract beginning in 2018.

First, the Court rejects Defendants' argument that Sutton's refusal to terminate Plaintiff each year qualifies as yearly "hiring."[78] Second, even

---

[74] *Id*.
[75] White v. Omega Protein Corp., 226 F. App'x 360, 362 (5th Cir. 2007); Spears v. Patterson UTI Drilling Co., 337 F. App'x 416, 422 (5th Cir. 2009).
[76] *Id*.
[77] Russell v. McKinney Hosp. Venture, 235 F.3d 219, 229 (5th Cir. 2000) (citing Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996).
[78] *See* Fitzpatrick v. Pontotoc Cty., Miss., 612 F. App'x 770, 776 n.5 (5th Cir. 2015) ("The same actor inference likely does not apply on the facts of this case. First, Pontotoc County cites no case in which the decision to retain an employee—rather than a decision to hire him—is sufficient to trigger the inference.") *Cf*. Sreeram v. La. State Med. Ctr.-Shreveport, 188 F.3d 314, 321 (5th Cir. 1999) (applying the same actor inference where the actor "granted her request to stay in the program for another year despite the Committee's recommendation that her residency be terminated"). Sutton does allude to the fact that she advocated for Plaintiff prior to his termination. *See* Doc. 41-2 at 18–19. Whether the facts of

assuming that Sutton had sufficient control over the hiring process to trigger application of the same actor inference,[79] for the reasons already stated above, the Court finds that Plaintiff has presented sufficient evidence of pretext to overcome the inference at this stage.[80] Accordingly, Defendants' Motion for Summary Judgment is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED.**

New Orleans, Louisiana this 15th day of January, 2021.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

this case are closer to *Fitzpatrick* or *Sreeram* depends on Sutton's credibility and is therefore a question for the jury.

[79] Plaintiff argues that Sutton's testimony is inconclusive on this point.

[80] *See e.g.,* Jones v. R.G. Barry Corp., No. 16-CV-154 (RCL), 2017 WL 1049566, at *9 (W.D. Tex. Mar. 17, 2017) ("Here, Jones has presented evidence that contradicts the purported reasoning behind Jones' termination. Thus, while Evans is entitled to an inference that he lacked a discriminatory animus, Jones has presented evidence to rebut this inference."). Garza v. Ranier L.L.C., No. A-12-CV-475-AWA, 2013 WL 3967786, at *6 (W.D. Tex. July 31, 2013) ("Because of the [three and a half years] passage of time, the Court finds that the same actor inference is inapplicable or at best so weak as to not undermine the issue of pretext in this case.").